IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THERESA GRIFFIN,              )
                              )
     Plaintiff,               )
                              )
v.                            )   Civil Action No. 01:10-cv-359
                              )
PRINCE WILLIAM HEALTH SYSTEM, )
                              )
     Defendant.               )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Prince William Health System's ("PWHS") Motion for Summary Judgment.

Plaintiff Theresa Griffin began work with PWHS as a full-time Nurse Aide in 1975. Plaintiff became a registered nurse in 1997 and progressed from RN-I to a RN-IV from 1997 to 2006. During her tenure as a nurse at PWHS, Plaintiff worked in the Special Procedures Department ("SPD"), a subdivision of Perioperative Services. That department provides outpatient gastroenterology procedures, such as endoscopies and colonoscopies, in addition to other specialty procedures, including electro-convulsive therapy treatments and cardiac testing.

Nurses within SPD are responsible for providing nursing support for patients undergoing endoscopic procedures. Specifically, RN-IVs are responsible for (a) pushing patients on

stretchers to the special procedures rooms; (b) assisting with sedations and procedures; (c) pushing the patients on stretchers to the post-anesthesia care unit recovery room; (d) moving equipment around the department or to another floor of the hospital; (e) moving boxes of supplies; (f) moving medicated and/or sedated patients; (g) applying pressure on a patient's abdomen or other body location; (h) performing CPR; (i) turning or moving patients on a stretcher quickly depending on the situation; (j) turning or lifting patients on their side or onto their backs; (k) turning patients with the assistance of a draw sheet; (l) holding or lowering patients to the floor, without allowing them to fall, if the patient became dizzy or light-headed; and (m) responding to Code Blues. During Plaintiff's tenure with SPD, procedures were scheduled every thirty to forty-five minutes, with two nurses assigned to each patient or procedure. The patients in SPD could weigh up to 250 to 300 pounds, and when sedated, were considered "dead weight."

On May 15, 2008, Plaintiff met with her supervisors to address instances of Plaintiff's alleged unprofessional conduct. During the meeting, Plaintiff's supervisors also discussed the recent downturn in the number of patients in SPD, which had caused PWHS to reduce the operating days of SPD from five to three. This reduction in patients made it difficult for all of the nurses in SPD to schedule forty-hour workweeks. As a result,

2

PWHS decided to allow SPD nurses to cross-train in order to pick up hours in other Perioperative Services departments. During the meeting, Griffin informed her supervisors that back problems and an inability to lift heavy loads would prevent her from working anywhere other than SPD.

Based upon Griffin's statement, Griffin's supervisors began discussing the possibility of a reasonable accommodation for these restrictions. They asked Griffin to provide PWHS with documentation regarding the nature of her restrictions to determine if an accommodation could be made without undue hardship. To that end, Griffin was provided a letter on May 19, 2008, explaining what information would be required from her Griffin's physician.

On June 23, 2008, PWHS received a note from Griffin's treating physician. The note indicated that Griffin was unable to lift patients and equipment up to forty pounds as required in her job description. PWHS followed up with Griffin's physician the following day, learning that Griffin had a permanent condition that restricted her from lifting anything over twenty-five pounds and required her to sit down five to ten minutes every hour.

Since Plaintiff could not lift more than twenty-five pounds based upon the permanent lifting restrictions imposed by her doctor, PWHS determined that it could not accommodate

3

Plaintiff's reported impairment. PWHS determined that allowing Plaintiff to continue working in SPD, or any other RN-IV capacity in Perioperative Services, created a significant risk to patients, as Plaintiff was responsible for ensuring the safety of sedated patients, responding to emergency situations, and regularly moving and lifting patients and equipment of up to 40 pounds. On June 27, 2008, John Hayford, PWHS Occupational Health Director, informed Griffin that she could not be accommodated and that she should apply for long term disability benefits.

Griffin then went on medical leave from her position with PWHS pursuant to PWHS Policy No. 322PWH, entitled "Leave of Absence: Family Medical Leave (FML) and Medical Leave (ML)." On or about February 25, 2009, Robyn Passmore, Human Resources Generalist at PWHS, sent a letter to Griffin that if, and when, she intended to return to work, she would need to provide PWHS's Occupational Health Department with a physician's statement releasing her to return to work and advising PWHS of when she intended to return to work. Griffin informed PWHS that she intended to return to work on March 10, 2009, but never provided PWHS with a physician's statement. Pursuant to its policy, PWHS terminated Griffin's employment effective June 10, 2009.

Plaintiff filed a Complaint and later an Amended Complaint against PWHS, seeking damages for violation of Title I of the

Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981. Plaintiff voluntarily dismissed her Title VII and Section 1981 claims, leaving only the ADA claim for this Court to resolve on this motion.

This Court will grant summary judgment when a party fails to make a showing sufficient to establish the existence of any essential element of the party's case on which that party has the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56(c). A movant need only show that there is an absence of evidence or support for the opposing party's case. See Celotex Corp., 477 U.S. at 325. If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the Court will grant summary judgment "to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 324-25); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) (citing Felty, 818 F.2d at 1128).

To establish a prima facie case of disability discrimination, "a plaintiff must prove: (1) that [s]he has a disability; (2) that [s]he otherwise qualified for the employment or benefit in question; and (3) that [s]he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995) (citing Gates v. Rowland, 39 F.3d 1439, 1445 (9th Cir. 1994)). Plaintiff fails to prove any of these three elements.

First, Plaintiff cannot establish that she suffered from a disability. A person is disabled within the meaning of the ADA if she, among other things, has "physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). "Substantially limits" means either (i) unable to perform a major life activity that the average person in the general population can perform, or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity. See 29 C.F.R. § 1630.2(j)(1).[1]

---

[1] The Americans with Disabilities Amendments Act of 2009 ("ADAAA") amended the ADA to expand the list of recognized major life activities and to ensure that courts did not take into account the ameliorative effects of mitigating measures or the episode nature of an impairment. Pub. L. No. 110-325, 112 Stat. 3553. The ADAAA, however, does not govern this Court's analysis of events prior to January 1, 2009. See Shin v. Univ. of Md. Med. Sys. Corp., 369 Fed. App'x 472, 479 n.14 (4th Cir. 2010) (unpublished) (citations omitted). To the extent it applies to Plaintiff's termination, it does not impact this Court's analysis since lifting was a recognized major life activity prior to the ADAAA's enactment.

The only major life activity that Plaintiff has alleged is lifting. While lifting is a major life activity, a general restriction on the amount one can lift does not necessarily rise to a level of substantial limitation as prescribed in the ADA. As the Fourth Circuit has held, "as a matter of law, . . . a twenty-five pound lifting limitation—particularly when compared to an average person's abilities—does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." Williams v. Channel Master Satellite Systems, Inc., 101 F.3d 346, 349 (4th Cir. 1996), cert. denied, 520 U.S. 1240 (1997); see Pollard v. High's of Baltimore, Inc., 281 F.3d 462, 470 (4th Cir. 2002), cert. denied, 537 U.S. 827 (2002). Though there is no per se rule that a twenty-five pound lifting restriction can never constitute a disability, see Taylor v. Federal Express Corp., 429 F.3d 461, 463 n.2 (4th Cir. 2005), cert. denied, 547 U.S. 1147 (2006), "[c]ourts routinely grant summary judgment for employers in ADA cases involving persons restricted to lifting twenty-five pounds or more, finding that the substantially limited requirement is not met," Billings v. Stonewall Jackson Hosp., No. 6:08-CV-010, 2009 U.S. Dist. LEXIS 66776, at *33 (W.D. Va. July 13 2009) (collecting cases). In the end, this Court has nothing more than Plaintiff's twenty-five pound lifting restriction as memorialized by Plaintiff's treating physician's note on June

7

18, 2008. This restriction fails to establish Plaintiff was substantially limited in a major life activity.

Plaintiff also fails to establish that she is a qualified individual with a disability under the ADA. A "qualified individual with a disability" is "an individual . . . who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining whether a plaintiff is so qualified, this Court considers (1) whether she can perform the essential functions of the job at issue, and (2) if not, whether any reasonable accommodation by the employer would enable her to perform those functions. See Tyndall v. Nat'l Educ. Ctrs., 31 F.3d 209, 213 (4th Cir. 1994)(quoting Chandler v. City of Dallas, 2 F.3d 1385, 1393-94 (5th Cir. 1993)).

If a job function bears more than a marginal relationship to the job at issue, it is an essential job function. Rohan v. Networks Presentations, LLC, 375 F.3d 266, 279 (4th Cir. 2004). "[E]ssential functions mean the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). To determine if a particular function is essential, this Court considers, among other things, whether (1) the employer's position exists to perform that function, (2) a limited number of employees are available to

whom that function can be assigned, and (3) the employee was hired for her ability to perform that function because it requires highly specialized knowledge. 29 C.F.R. § 1630.2(n)(2). Courts must also give "consideration . . . to the employer's judgment as to what functions of a job are essential," and a written position description prepared by the employer before advertising or interviewing for that position "shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).

The undisputed facts establish that lifting forty pounds was an essential function of the RN-IV position. First, PWHS's job description, created in 2001, identifies lifting forty pounds as an essential function of the job. Second, Plaintiff admitted, and as corroborated by expert and witness testimony, that (1) lifting, turning, and positioning patients were duties of a RN-IV, (2) patients in SPD routinely weigh 200 pounds and can weigh as much as 250 to 300 pounds, and (3) two nurses are assigned to each patient. Third, the RN-IV position exists to ensure patients receive the necessary medical treatment in a safe environment. Fourth, the irrefutable vocation expert testimony, which was opined prior to Plaintiff bringing the present lawsuit, was that the forty-pound lifting requirement is an essential function of the RN position in SPD. Finally, and perhaps most importantly, all RNs within SPD are responsible for

responding to emergent situations, including assisting with patients who are falling or light-headed and Code Blues, which require the nurse assigned to a particular patient to administer whatever actions are necessary to ensure patient safety.

The undisputed facts demonstrate that Plaintiff could not perform an essential function of her job. Plaintiff's Amended Complaint, her deposition testimony, and the deposition testimony of her treating physician establish that Plaintiff, a RN-IV, was unable to lift forty pounds as of June 18, 2008. The ability to lift forty pounds is an essential function of the RN-IV position, and Plaintiff was incapable of performing that essential function.

Based upon Plaintiff's inability to perform an essential job function of her position, Plaintiff must demonstrate that there is a material dispute over whether Plaintiff could perform this essential job function with a reasonable accommodation. Plaintiff cannot satisfy this burden. No accommodation existed that would have enabled Plaintiff to lift the requisite forty pounds.

The sole accommodation Plaintiff sought was to have other nurses assist her in lifting anyone or anything greater than twenty-five pounds. This request is not reasonable, as Plaintiff essentially sought the creation of a new position or the reallocation of essential functions from an existing position.

See Hall v. U.S. Postal Serv., 857 F.2d 1073, 1078 (6th Cir. 1988) ("[A]n accommodation that eliminates an essential function of the job is not reasonable."); Lawson v. Principi, No. 7:00cv851, 2001 U.S. Dist. LEXIS 109007, at *14-15 (W.D. Va. Aug. 21, 2001) ("an employer . . . is not required to accommodate a disabled employee by placing [him] on permanent light duty when such an assignment prevents the employee from performing the essential duties of [his] position."). Requiring other nurses to assist Plaintiff with her lifting duties for her permanent lifting restriction is not a reasonable accommodation: it would require PWHS to ensure that other employees perform the essential functions of not only their job, but also Plaintiff's.

Even assuming that Plaintiff was a qualified individual with a disability, Plaintiff has not established a prima facie case that PWHS unlawfully terminated her position. See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (holding that an ADA plaintiff must make the same prima facie showing as required by Title VII to establish an actionable ADA claim). Plaintiff has not established any facts surrounding her termination that give rise to an inference of unlawful discrimination. Moreover, Plaintiff cannot establish the requisite pretext—that is, that "her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." Id. PWHS terminated Plaintiff

11

pursuant to its Leave of Absence: Family Medical Leave and Medical Leave Policy, which PWHS neutrally administered with respect to Plaintiff after a year of leave. An employer's administration of a neutral policy qualifies as a legitimate, non-discriminatory reason for termination See Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003).

For the foregoing reasons, summary judgment should be granted on behalf of the defendant. An appropriate order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
April 26, 2011